# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## CASE NO. 20-13278
_____

JOHN "BURT" MCALPIN,

*Plaintiff/Appellant*,

v.

TOWN OF SNEADS, et al.,

*Defendants/Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
T. KENT WETHERELL, II
(5:19-cv-00292-TKW-MJF)

_____

## APPELLANT'S REPLY BRIEF
_____

Marie A. Mattox
Ashley N. Richardson
Marie A. Mattox, P.A.
310 East Bradford Road
Tallahassee, FL 32303
(850) 383-4800
(850) 383-4801 (facsimile)
marie@mattoxlaw.com
ashley@mattoxlaw.com

# C-1

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant/Plaintiff John "Burt" McAlpin, pursuant to FRAP 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files her Certificate of Interested Persons and Corporate Disclosure Statement:

1. Gwendolyn Palmer Adkins (Counsel for Appellee)

2. Lynda Bell (Appellee)

3. Coppins Monroe Adkins Etc P A (Law Firm for Appellee)

4. Helen Grice (Appellee)

5. Sherri Griffin (Appellee)

6. Daryl Johnson (Appellee)

7. Marie A. Mattox (Counsel for Appellant)

8. Marie A. Mattox, P.A. (Law Firm for Appellant)

9. John "Burt" McAlpin (Appellant)

10. Christopher Todd Owen (Attorney for Appellee)

11. Danny Pettis (Appellee)

12. Town of Sneads Florida (Appellee)

13. T. Kent Wetherell II (District Judge)

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT ...................................................C-1

TABLE OF CONTENTS............................................................................................i

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT .............................................................................................................1

    I.    THE DISTRICT COURT ERRED BY FINDING THAT MCALPIN'S DISCLOSURES WERE NOT PROTECTED DISCLOSURES PURSUANT TO § 112.3187, FLA. STAT...............1

        A.    McAlpin engaged in statutorily protected activity. .....................1

        B.    McAlpin established a causal connection between his protected activity and his termination.........................................5

    II.    THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON MCALPIN'S CLAIMS OF FMLA INTERFERENCE AND RETALIATION...............................6

    III.    THE DISTRICT COURT ERRED BY FINDING THAT MCALPIN DID NOT MEET HIS BURDEN TO ESTABLISH THAT THE TOWN'S ALLEGED JUSTIFICATIONS FOR ITS ACTIONS WERE MERELY A PRETEXT. .........................................6

    IV.    THE DISTRICT COURT ERRED BY FINDING THAT MCALPIN'S SPEECH WAS NOT PROTECTED BY THE FIRST AMENDMENT, AND NOT A SUBSTANTIAL FACTOR IN HIS TERMINATION..................................................9

        D.    The Town of Sneads is liable....................................................9

        F.    Appellees Bell and Griffin are also liable................................10

CONCLUSION .......................................................................................................12

CERTIFICATE OF COMPLIANCE ....................................................................... 13

CERTIFICATE OF SERVICE ............................................................................... 13

## **TABLE OF AUTHORITIES**

Irven v. Dep't of Health and Rehab. Serv., 790 So.2d 403 (Fla. 2001) ................1, 4

Jones v. Sch. Bd. of Orange County, Fla., 2005 WL 1705504 (M.D. Fla. 2005) ....................................................................................................................3, 5

Martin County v. Edenfield, 609 So. 2d 27 (Fla. 1992) ............................................2

Mason v. Village of El Portal, 240 F.3d 1337 (11th Cir. 2001) ................................9

Monroe v. Pape, 365 U.S. 167 (1961), *overruled on other grounds,* Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 659 (1978)..........................................................................................10

Nazzal v. Florida Department of Corrections, 267 So. 3d 1094 (Fla. 1st DCA 2019) ......................................................................................3

Shuck v. Clark, 2007 WL 676198 (M.D. Fla. 2007) .............................................3, 5

**Statutes:**

§ 112.3187, Fla. Stat. .............................................................................................1, 5

§ 112.3187(2), Fla. Stat............................................................................................3

§ 112.3187(5), Fla. Stat............................................................................................2

§ 112.3187(6), Fla. Stat............................................................................................1

## ARGUMENT

**I. THE DISTRICT COURT ERRED BY FINDING THAT MCALPIN'S DISCLOSURES WERE NOT PROTECTED DISCLOSURES PURSUANT TO § 112.3187, FLA. STAT.**

In their Answer Brief, Appellees argue as they did below that McAlpin did not engage in any activities protected by § 112.3187, Fla. Stat. Keeping in focus that the Florida Public Sector Whistleblower's Act offers broad remedial coverage, and that Appellees' proffer clearly shows the substantial material fact disputes at play, this Court should thus find that McAlpin did indeed engage in protected whistleblowing and was terminated for that activity. Irven v. Dep't of Health and Rehab. Serv., 790 So. 2d 403, 405-06 (Fla. 2001) (the Act should be interpreted liberally, and the statute itself "could not have been more broadly worded.")

### A.    McAlpin engaged in statutorily protected activity.

Appellees take issue with McAlpin's seven acts of protected whistleblowing, claiming that the failed to disclose information protected by the Act and that he failed to disclose that information to an appropriate local official with the authority to investigate or otherwise remedy the violation. [AB 27, citing § 112.3187(6), Fla. Stat.]. As explained in greater detail in the Initial Brief, the record shows otherwise.

On or about June 11, 2018 (report number one), McAlpin disclosed – both verbally *and in writing* – the criminal records of Pettis and Johnson, asking Grice not to appoint either as police department liaison due to ethical conflicts. This

1

disclosure was both in writing and regarding "any other abuse." § 112.3187(2), Fla. Stat. Moreover, Grice, as the Council President and the one with the power to appoint the liaison, was the appropriate local official with the power to manage or otherwise remedy the issue. Id.

McAlpin then reported to FDLE that Griffin had likely stolen money collected on behalf of the Town at the local ballpark (report number two). As explained in the Initial Brief, McAlpin verbally as part of an investigation and in writing disclosed both a suspected violation of law and gross misfeasance and malfeasance, as well as "any other abuse." § 112.3187(5), Fla. Stat; Martin County v. Edenfield, 609 So. 2d 27, 29 (Fla. 1992). Critically, he *then* reported in a signed and written letter to the Town Council (report number five) that he had engaged in this protected whistleblowing by contacting FDLE, further satisfying the requirements of the Act.

McAlpin also repeatedly disclosed his concerns about eliminating the midnight dispatch position and the need for additional officers, to preserve and maintain the provision of police services and overall public safety within the Town (report number three). Appellees argue that McAlpin did not make this disclosure in writing nor did it report a violation of law or policy or any matter protected by the Act. [AB 31]. However, on August 31, 2018, McAlpin specifically responded to Bell's email regarding "issues and concerns" and articulated the recurring public safety concerns that would follow any reduction in dispatch staff or officers. He also

specifically asked if he alone was targeted for this hostile scrutiny, or if other department heads encountered the same treatment. His email satisfies the writing requirement, and discloses gross mismanagement and "any other abuse" as provided for in the Act. § 112.3187(2), (5), Fla. Stat. That the reported conduct was not per se "illegal" is of no moment.

Next, on July 2, 2018, McAlpin notified Pettis that removing Allen's disciplinary memorandum from his personnel file violated Chapter 119 (report number four). Appellees contend that the meetings in question were not "troubleshooting" meetings, relying solely on the Council meeting in which the motions were made. [AB 31]. However, McAlpin met with Pettis regarding the situation, and that meeting is one of "troubleshooting" or an investigation, in which a written, signed complaint is not required to satisfy the Act. Shuck v. Clark, 2007 WL 676198 (M.D. Fla. 2007); Jones v. School Bd. of Orange County, Fla., 2005 WL 1705504 (M.D. Fla. 2005).

On August 9, 2018, McAlpin provided written notice to the Council that he had engaging in whistleblowing activities by providing information to FDLE (report number five). Appellees assert that the document fails to inform the reader of the suspected criminal conduct, but Appellees' cited case does not prescribe any level of specificity. [AB 33, citing Nazzal v. Florida Department of Corrections, 267 So. 3d 1094, 1097 (Fla. 1st DCA 2019)].

3

McAlpin's correspondence to the Council is clear: he disclosed suspected criminal conduct by a Town official to FDLE. [Doc. 62-44]. His disclosure is protected.

Next, in a series of emails in and around September 13, 2018, McAlpin informed Bell that she was improperly deducting leave from his vacation leave bank, despite being out on sick leave (report number six). Appellees are correct that there is no indication that Bell's conduct violated state or federal laws, but there is at the very least a dispute of material fact as to whether she violated the Town's policies regarding sick leave. [AB 34]. McAlpin's emails provide the requisite writing, and disclose gross mismanagement, misfeasance, and any other abuse. Irven, 790 So. 2d at 407 n.3 ("Misfeasance is defined as the 'improper doing of an act which a person might lawfully do; and 'malfeasance' is the doing of an act which a person ought not to do at all.") (quotations omitted).

Finally, in late September 2018, McAlpin reported to Green that the Council had improperly and illegally placed Bell over him as his direct supervisor (report number seven). Green investigated the matter further, and prepared written correspondence, in his position as an attorney, on McAlpin's behalf. By contacting the Town Attorney with his concerns about the procedural legality of a Council action, McAlpin participated in an investigation in which his verbal disclosures satisfy the requirements of the Act and reported those actions to an appropriate local official with the power to investigate the matter, and his disclosures are protected.

4

Shuck, 2007 WL 676198 (M.D. Fla. 2007); Jones v. School Bd. of Orange County, Fla., 2005 WL 1705504 (M.D. Fla. 2005).

As fully set forth in the Initial Brief, McAlpin's seven acts of reporting are disclosures protected by § 112.3187, Fla. Stat. The District Court erred by finding otherwise. Accordingly, this Court should reverse the District Court's order granting summary judgment.

**B.    McAlpin established a causal connection between his protected activity and his termination.**

Appellees only argument in opposition to McAlpin's causation proffer is that "[a]ny presumption due to timing is eliminated by Plaintiff's acts of defiance which increased each month culminating with blatantly belligerent actions in September." [AB 36-37]. This, however, reflects Appellees' view of the facts, not the one most favorable to McAlpin.

First, Appellees cannot offer a counterargument to the close timing between McAlpin's ongoing reports and his termination. However, as explained in the Initial Brief, there is additional evidence that McAlpin's protected reporting resulted in his termination, including that Green was also terminated for investigating the Bell takeover and taking the same position as McAlpin expressed. Grice actually called McAlpin's report to Green "reprehensible." Bell then questioned McAlpin's sick leave and repeatedly contacted his medical providers, and thereafter concocted alleged issues with his performance to justify his termination. Appellees insist that

5

this Court rely on their interpretation of the facts, which is inappropriate for summary judgment, where there is clear evidence in this record that once McAlpin began to make his protected disclosures in mid-2018, the Council and its appointed Manager took action to rid itself of McAlpin within a few short months, despite his twelve years of dedicated and effective service. The record establishes causation, and summary judgment was granted in error.

## II.   THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON MCALPIN'S CLAIMS OF FMLA INTERFERENCE AND RETALIATION.

Appellees offer no additional argument contradicting the District Court's finding that McAlpin met his *prima facie* obligations with regards to both his interference and retaliation claims. [AB 37-39]. No additional reply is necessary.

## III.   THE DISTRICT COURT ERRED BY FINDING THAT MCALPIN DID NOT MEET HIS BURDEN TO ESTABLISH THAT THE TOWN'S ALLEGED JUSTIFICATIONS FOR ITS ACTIONS WERE MERELY A PRETEXT.

In their Answer Brief, Appellees break McAlpin's pretext proffer down into minute subparts, asking this Court to view the events in a vacuum, instead of as a whole and in a light most favorable to McAlpin. Although McAlpin fully set forth the facts establishing that Appellees' actions were merely a pretext for retaliation, several of Appellees' contentions in the Answer Brief require a response.

First, Appellees characterize McAlpin's statement that he would "fight to the end" any changes to the police department [AB 43] ignores McAlpin's testimony

that public safety and the provision of effective policing and dispatch services was the reason he took a firm stand. This was not an act of belligerence, but one of leadership, and the mere fact that there can be such wildly different views of the facts shows that the matter should have been submitted to the jury for resolution.

Next, Appellees argue that Bell sent correspondence to all the department heads about overtime, and that no other department continued to accrue overtime. [AB 44]. However, Appellees ignore that the police department could not simply eliminate overtime in one fell swoop given the severe and ongoing staffing shortages that led to the accrual of so much overtime in the first place. Moreover, Appellees also ignore that McAlpin could not simply allow his few employees to utilize their accrued compensatory time to reduce those balances, as there were no other employees to work in their place. What Appellees insist is "insubordination" is simply the continued running of the police department, which McAlpin repeatedly communicated could not be done in any other manner and still ensure proper police and dispatch coverage to ensure public safety.

Similarly, Appellees argue that McAlpin refused to follow directives and is the very definition of insubordinate. [AB 45]. Once again, however, the District Court elected to rely on Appellees' interpretation and view of the facts, and not McAlpin's. He did indeed have every intention of returning to work after his medical leave, and there was no reason to take his patrol vehicle absent a premediated desire

7

to terminate his employment. Yet McAlpin complied as soon as he was able and returned the vehicle. He made or authorized purchases necessary to operate his department, which were indeed small, such as paper towels, and which Grice and Bell characterized as wasteful and excessive spending. What Appellees contend is insubordinate is undermined by McAlpin's testimony that he was simply trying to run the police department as he had for over a decade without issue.

Appellees then insist that each Councilmember had his or her own justification for terminating McAlpin and that those reasons do not show any conflict or confusion. [AB 46]. This is blatantly false. As noted in the Initial Brief, the fact that each Councilmember simply pointed to some arbitrary or minor justification, most of which were blatantly false accusations and that this record has proven to be false, supports McAlpin's proffer of pretext. Once again, more than anything, the substantial disputes of material facts render this matter inappropriate for summary judgment.

Finally, Appellees contend that following their own progressive discipline policies would have been "pointless." [AB 48]. By Appellees' own admission, they had no intention of working with McAlpin, and targeted him for termination. Instead of counseling, disciplining, or even suspending McAlpin for these alleged instances of insubordination – such as buying paper towels or scheduling police and dispatch

8

coverage to ensure public safety – they terminated him outright despite his years of service.

A reasonable jury could certainly find that these excuses were crafted as pretext for the Council's discriminatory conduct. Summary judgment should have been denied, and the matter submitted to the jury to resolve the numerous disputes of material fact. This Court should reverse the order granting summary judgment.

IV. **THE DISTRICT COURT ERRED BY FINDING THAT MCALPIN'S SPEECH WAS NOT PROTECTED BY THE FIRST AMENDMENT, AND NOT A SUBSTANTIAL FACTOR IN HIS TERMINATION.**

McAlpin fully set forth his arguments in the Initial Brief regarding his speech and Appellees' retaliatory actions in the wake of that speech. However, several of Appellees' arguments regarding municipal and individual liability require a response.

D. **The Town of Sneads is liable.**

Appellees again argue that three of the five members of the Council must harbor retaliator motives to attach liability. Mason v. Village of El Portal, 240 F.3d 1337, 1339 (11th Cir. 2001). [AB 51-53]. However, as shown in the Initial Brief, it is clear that Pettis, Johnson, and Grice were all fully aware of each of McAlpin's acts of protected speech, having attended the very Council meetings where most of the speech was made. They admitted to receiving his letters and emails, having knowledge of his opinions and reports, and even that they terminated Green at the

9

same meeting in which they terminated McAlpin. Each admits that Green was terminated for reviewing McAlpin's report about improperly making Bell his supervisor, and opining in favor of McAlpin's position. A reasonable jury could easily conclude that Pettis, Johnson, and Grice together terminated McAlpin for his speech, and the Town of Sneads is, accordingly, liable. Moreover, as has become the common theme on appeal, at the very least there exists a dispute of material fact as to the Councilmembers' retaliatory motives, and a jury must make that final determination. Summary judgment was granted in error, and this Court should reverse that order.

F.   **Appellees Bell and Griffin are also liable.**

Appellees argue that Bell and Griffin cannot be held liable because they were not decisionmakers. [AB 57]. However, each can be found liable as an officer who, acting under color of state law, commits an act directly resulting in a constitutional deprivation is liable for damages under § 1983. Monroe v. Pape, 365 U.S. 167 (1961), *overruled on other grounds,* Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 659 (1978). There can be no meaningful dispute that Bell committed acts that directly resulted in a constitutional deprivation – she falsely claimed that McAlpin was insubordinate and continued to engage in acts of retaliation, such as refusing to allow him to use his medical leave and contacting his

medical providers – following his protected speech. Indeed, as fully detailed in the Initial Brief, she was the catalyst for many of the actions taken against McAlpin.

As further noted in the Initial Brief, Griffin acted similarly to deprive McAlpin of his rights, and aided Bell in retaliating against McAlpin. She and Bell falsely reported to Grice and other members of the Council that McAlpin was insubordinate and failed to respond to Dias' records request, when it was, in fact, Griffin's responsibility and McAlpin had responded as best as he could under the circumstances, which due to the matter being actively under investigation, tied his hands. Acting under color of state law, Bell and Griffin are thus liable for the constitutional deprivations McAlpin suffered for exercising his free speech rights pursuant to the First Amendment.

## CONCLUSION

The District Court erred by finding that McAlpin's disclosures were not protected by the Florida Public Whistleblower Act, and were not protected by the First Amendment. The District Court erred again by finding that much of McAlpin's speech was not protected by the First Amendment, and in the few instances it felt his speech may have been protected by the First Amendment, he was unable to establish that the speech was a "substantial part" of his termination. Finally, while the District Court found that while McAlpin established *prima facie* cases of FMLA retaliation and interference, it erred by finding that he did not offer evidence to rebut Appellees' allegedly legitimate, non-retaliatory reasons for terminating his employment, and thus establishing pretext. Accordingly, summary judgment must be reversed Accordingly, this requires reversal and remand for a trial on the merits.

                              Respectfully submitted,

                              s/ Ashley N. Richardson
                              Marie A. Mattox
                              Florida Bar No. 739685
                              Ashley N. Richardson
                              Florida Bar No. 42003
                              Marie A. Mattox, P.A.
                              203 North Gadsden Street
                              Tallahassee, FL 32301
                              (850) 383-4800 (telephone)
                              (850) 383-4801 (facsimile)

                              ATTORNEYS FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). This brief contains a total of 3246 words.

s/ Ashley N. Richardson  
Marie A. Mattox

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via electronic filing to all attorneys of record, this 2nd day of March 2021.

s/ Ashley N. Richardson  
Marie A. Mattox